**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **SANTOS R. VASQUEZ,** | **CASE NO. 3:11CV0177** |
| Plaintiff, | |
| v. | **MAGISTRATE JUDGE GREG WHITE** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | **MEMORANDUM OPINION & ORDER** |

Plaintiff Santos Vasquez ("Vasquez ") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Vasquez's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is vacated and the case remanded for further proceedings consistent with this Order.

## I. Procedural History

On September 11, 2007, Vasquez filed an application for DIB, POD, and SSI alleging a disability onset date of July 15, 2007, and claiming that he was disabled due to hypertension and affective disorders.[1] (Tr. 45-46.) His application was denied both initially and upon reconsideration. Vasquez timely requested an administrative hearing.

On August 17, 2009, an Administrative Law Judge ("ALJ") held a hearing during which

---

[1] Vasquez previously applied for DIB and SSI in January, 2006 and December, 2006, alleging a disability onset date of November 1, 2005, due to a hernia and kidney stones. (Tr. 118, 123, 165, 126, 129.) Both applications were denied, and he did not appeal.

Vasquez, represented by counsel, testified. Charles McBee[2], an impartial Vocational Expert ("VE"), also testified. On September 30, 2009, the ALJ found Vasquez was able to perform past relevant work and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age 42 at the time of his administrative hearing, Vasquez is a "younger" person under social security regulations. (Tr. 24.) *See* 20 C.F.R. §§ 404.1563 & 416.963. Vasquez has an eighth grade education and past relevant work as a material handler. (Tr. 16, 24.)

### *Evidence Pertaining to Vasquez's Mental Impairment*

Vasquez disputes the ALJ's mental retardation finding based upon school records and the state consultative psychologist's report.

In September, 1974, when Vasquez was seven years old and in the second grade, he was diagnosed by a school psychologist with borderline defective range of intelligence and a delay in visual-motor development based upon an IQ score of 76. (Tr. 269.) He was placed in special education – the "A.C. program." *Id*.

In January, 1981, when Vasquez was thirteen years old and in the eighth grade, based upon an IQ score of 68, the school psychologist concluded that Vasquez's intelligence was in the slow-learning range. (Tr. 271.) The psychologist noted that Vasquez should "remain as placed in 8 EMR.[3]" *Id*.

In October, 1983, when Vasquez was sixteen years old and in the ninth grade, a school psychologist administered the Wechsler Intelligence Scale for Children-Revised, which resulted in a verbal IQ of 67, a performance score of 86, and a full scale score of 74. (Tr. 274, 276.) The psychologist noted: "His verbal subtests were weak, with general information being his weakest

---

[2]The ALJ's decision identifies the VE as Charles McBee. The hearing transcript, however, identifies him as Charles "McVie." (Tr. 18.)

[3]"EMR" is an abbreviation for educable mentally retarded.

2

area. Santos' performance scores were much stronger, and if viewed alone would place [him] in the borderline range of intellectual functioning. His relative strengths, his ability to determine details in his environment and his ability to assemble objects from their parts, were scored just below the mean. His weakest performance area, his ability to reproduce abstract block designs, was scored at the same level as his strongest verbal scores." (Tr. 277.) The psychologist stated that Vasquez "remains eligible for developmentally handicapped services." (Tr. 278.)

In October, 2007, Vasquez underwent a state consultative psychological examination by Mark D. Hammerly, Ph.D. (Tr. 358-368.) The Wechsler Adult Intelligence Scale ("WAIS") was administered, resulting in a verbal IQ of 66, performance IQ of 74, and full scale IQ of 66. (Tr. 363.) Dr. Hammerly noted that even though the scores were in the "MR" range, he diagnosed borderline intelligence, stating "[t]he confidence interval overlaps into this range, and caution is necessary when making a discernment, here. I would defer to any earlier diagnosis of MR if such is available due to some adaptive correlates, but in the absence of same, the borderline V-code should be used as a working hypothesis for adjudication." (Tr. 363-364.)

Vasquez reported to Dr. Hammerly that after he was denied social security disability benefits in 2005, he went to work at Wendy's, where he was lifting a container of grease, which caused his hernia. (Tr. 359.) He also reported that in June, 2007, he worked through a temporary agency at Jeep, cleaning filters. (Tr. 360.) He further reported that his longest period of employment was in 2000, "where they make posters on Laskey. . . I was wrapping up the posters and putting them on a pallet . . . [Q] . . . I was there for, uh, almost a year . . . [Q] . . . I left because I didn't have no high school diploma." *Id*. He reported no problems getting along with other workers, and "no problem with work speed, quality, or understanding unrelated to his medical problems." *Id*. Dr. Hammerly found Vasquez to be moderately impaired in the four work-related mental abilities. (Tr. 365.)

*Hearing Testimony*

At the hearing, Vasquez testified to the following:

- He currently resides with his grandmother. (Tr. 24.)
- As a student, he was in special education classes. (Tr. 25.)

3

- He went to Mildred Bayer Clinic for muscle spasms in his back and was given Ibuprofen 600 for pain. (Tr. 25-26.)

- Prior to surgery for a hernia in February, 2008, he had difficulty walking, standing, and sitting. (Tr. 26.)

- He testified that since the surgery, he can stand between one-half hour to one hour before experiencing pain in his lower back and testicles. *Id.* He can walk approximately two blocks before he has to sit down. (Tr. 27.) He can sit for about fifteen to twenty minutes before experiencing back pain. *Id*.

- He is treating at Unison for depression, two times a week, and has done so for over a year. *Id*.

- He takes Wellbutrin, which helps his depression "a little bit." *Id*. The only side effect he experiences is that he sweats a lot. *Id*.

- In February, 2009, one year after his hernia surgery, he attempted to return to work, but was unable to handle all the lifting due to back pain. (Tr. 28.)

- He watches television all day in his grandmother's basement. (Tr. 29.) If his grandmother needs medications, he walks to the store about ten minutes away. *Id.* His girlfriend does the grocery shopping as he is unable to lift the bags. *Id.*

- He feels he is unable to work because he does not get along with people, he has back problems, and discomfort from his hernia surgery. (Tr. 31.)

- He acknowledged that he could perform a job at which he could stand and sit as needed and where he would not have to work directly with others, such as the one suggested by the ALJ, a surveillance system monitor. (Tr. 31-32.)

- He acknowledged that at a doctor's visit on July 15, 2009, he reported that he was feeling better and that the Wellbutrin was working. (Tr. 32.)

- He is trying to gain custody of his thirteen year old daughter. (Tr. 33.) In order to do so, he is taking required parenting classes. *Id.* He is learning how to take better control of his daughter, and how to talk, instead of yelling. (Tr. 34.) He also is required to attend AA meeting, which he does faithfully. (Tr. 33-34.) He has been sober for 7-1/2 months. (Tr. 34.) In addition, he is in the process of getting his own place. (Tr. 33.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

4

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[4]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Vasquez was insured on his alleged disability onset date, and remained insured through the date of the ALJ's decision, September 30, 2009. (Tr. 10.) Therefore, in order to be entitled to POD and DIB, Vasquez must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Vasquez established medically determinable, severe impairments, due to affective disorder, borderline intellectual functioning, residual effects of a hernia, status post hernia surgery, and osteoarthritis; however, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Vasquez was found

---

[4]The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a"severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

capable of performing his past work activities, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of medium work. The ALJ then relied upon VE testimony to determine that Vasquez was not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure

prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

At step three of the disability evaluation process, the Commissioner must consider whether a claimant's impairments meets or equals any of the relevant listing requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 CFR §§ 404.1520(a), 416.920(a). The burden is on the plaintiff to present evidence establishing that he has a listing level impairment. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). An impairment that meets only some of the medical criteria and not all does not qualify, despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). An impairment or combination of impairments is considered medically equivalent to a listed impairment "... if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments." *Land v. Sec'y of Health and Human Servs.*, 814 F.2d 241, 245 (6th Cir. 1986) (*per curiam*). In order to show that an unlisted impairment or combination of impairments is medically equivalent to a listed impairment, the claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531.

> Listing 12.05(C) provides:
>
> Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
>> The required level of severity for this disorder is met when the requirements in A, B., C., or D are satisfied.
>>
>> * * *
>>
>> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. Part 404, App. 1, § 12.05(C). Under the listing, a claimant will be found disabled if he has (1) a valid IQ score between 60-70; (2) another impairment causing a significant work-

7

related limitation of function; and, (3) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22 (referred to as the "diagnostic description.")  20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.05; *Foster v. Halter,* 279 F.3d 348, 354-55 (6th Cir. 2001); *see also West v. Comm'r of Soc. Sec.*, 240 Fed. App'x. 692, 697–98 (6th Cir. July 5, 2007); *Turner v. Comm'r of Soc. Sec*., 381 Fed. App'x 488, 492 n.2 (6th Cir. 2010).

With respect to the requirements of the diagnostic description, a claimant must satisfy three factors: "(1) subaverage intellectual functioning; (2) onset before age twenty-two; (3) and adaptive skills limitations."  *Hayes v. Comm'r of Soc. Sec.*, 357 Fed. App'x 672, 674-675 (6th Cir. 2009).  "Adaptive skills limitations" refers to "a claimant's effectiveness in areas such as social skills, communications skills, and daily-living skills."  *Id*. at 677 (*citing Heller v. Doe*, 509 U.S. 312, 329, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)) (*quoting* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 28–29 (3d rev. ed.1987)).

As Listing 12.05(C) indicates, the two components address the severity of the impairment.  In addition, the listing recognizes that many individuals with mild mental retardation are still able to work.  Accordingly, a claimant who satisfies the diagnostic description must still produce a valid IQ score below 71 and demonstrate "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(C); *see also Muntzert v. Astrue*, 502 F. Supp.2d 1148, 1157–58 (D. Kan. 2007) ("DSM–IV and Listing 12.05(C) assume many, if not most, mildly mentally retarded individuals will be able to work.  However, they recognize that some mildly mentally retarded individuals may be unable to work where they have 'a physical or other mental impairment imposing an additional and significant work-related limitation of function.' 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(C).").

Furthermore, it is well established that the plaintiff—and not the ALJ—has the burden to produce evidence in support of a disability claim.  *See, e.g., Wilson v. Comm'r of Soc. Sec*., 280 Fed. App'x. 456, 459 (6th Cir. May 29, 2008) (*citing* 20 C.F.R. § 404.15129(a)).  *See also Struthers v. Comm'r of Soc. Sec*., 101 F.3d 104 (table), 1999 WL 357818 at *2 (6th Cir. May 26,

1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant. 20 C.F.R. §§ 416 .912, 416.913(d)."); *cf. Wright–Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) (although an "ALJ has an inquisitorial duty to seek clarification on material facts," a plaintiff, who is represented by counsel, must provide a "factual record" relating to the length of his employment when his past work was part of the record and was the basis of the initial decision to deny benefits). *See also Hayes v. Astrue*, 2011 WL 901013, *5 (S.D. Ohio Feb. 14, 2011).

The Sixth Circuit has held that a heightened articulation standard is not required of an ALJ at Step 3 of the sequential evaluation process. *See Bledsoe v. Barnhart*, No. 04–4531, 2006 WL 229795, at 411 (6th Cir. Jan. 31, 2006), *citing Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986). However, *Bledsoe* and *Dorton* make clear that substantial evidence must support the ALJ's findings and the findings must be legally sufficient and clear. *Id*.

Vasquez claims the ALJ erred by finding that he did not meet or equal Listing 12.05(C). Specifically, he contends that he meets the requirements of Listing 12.05(C) because, as the record reflects, his onset date of mental retardation was prior to age 22. He bases this upon an October 1983 verbal IQ score of 67, October 2007 verbal and full scale IQ scores of 66, and, an "additional and significant limitation," being his restriction to exertionally "medium" work. (Doc. No. 16 at 7-9.)

The Commissioner argues that Vasquez does not meet or equal Listing 12.05(C) for several reasons. First, IQ scores are not *per se* evidence of mental retardation. (Doc. No. 18 at 10-11.) The ALJ must also look to narrative reports that accompany test results. *Id*. Further, Vasquez was never diagnosed with mental retardation. *Id*. at 12. Finally, the Commissioner asserts that Vasquez's activities of daily living are inconsistent with mental retardation. *Id*. at 13.

In his reply brief, Vasquez counters that the Commissioner ignored the lowest-valid IQ

9

rule and the pre-age 22 evidence, specifically results from IQ testing performed in 1983. (Doc. No. 19 at 4-7.) He also argued that the Commissioner added a fourth requirement Listing 12.05(C) -- that there must be a formal diagnosis of mental retardation. *Id*. at 2-3.

The ALJ, without specifically addressing Listing 12.05(C), concluded that Vasquez does not have an impairment or combination of impairments that meets or medically equals one of the listing impairments of Listing 12.04 (Affective Disorders), explaining as follows:

> In making this finding, I have given particular consideration to the claimant's physical impairments, as well as his mental impairments (see Sections 1.00 et seq., Musculoskeletal System; and 12.00 et seq., Mental Disorders). Despite the claimant's combined impairments, the medical evidence does not demonstrate listing level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination. This conclusion is consistent with the opinions proffered by the State agency medical consultants who determined on multiple occasions [th]at the claimant does not present with a level of impairment approaching listing level severity. Exhibits 8F, 9F, 16F, 24F, and 25F. Neither the claimant nor his attorney suggested the presence of a listing level impairment.
>
> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.05. In making this finding, I have considered whether the "paragraph B" criteria of listing 12.04 are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>
> In activities of daily living, the claimant has mild restriction. Consistent with the claimant's testimony and reports in the record, he performs routine household chores and self-care activities without any significant assistance. Exhibit 3E.
>
> In social functioning, the claimant has moderate difficulties. The record does show the claimant has reported some difficulty and a tendency to isolate himself. Nevertheless, the record also shows successful interactions with others, as necessary for personal socialization, parenting classes, and tasks such as grocery shopping. He does best with superficial contact with others.
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties attributable to diminished intellectual function. Although the claimant reports that his attention span is short, he acknowledged being able to follow instructions, shop, and perform home and self care tasks. Even with his identified conditions, the claimant has not exhibited more than moderate deficits in his capacity to sustain concentration, persistence or pace.

(Tr. 12-13.)

10

Although the ALJ did not directly address Listing 12.05(C), he did examine the factors of 12.04(B), which criteria are identical to those in Listing 12.05(D).

> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, App. 1 §12.05(D).

The ALJ found that Vasquez did not exhibit "marked" limitations in his daily living activities, social functioning, or ability to maintain attention and concentration. (Tr. 13.) The ALJ further noted that Vasquez performed a number of activities inconsistent with mental retardation, including taking parenting classes in order to regain custody of his teenage daughter. (Tr. 15.)

The Commissioner contends that since the ALJ found that Vasquez's adaptive functioning was not at any time in the mentally retarded range, he does not meet the listing. Perhaps so, however, there was substantial evidence that should have been specifically addressed under 12.05(C). There is no doubt that Vasquez suffered from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." As the ALJ found, and the Commissioner does not dispute, Vasquez's other physical and mental impairments restricted him to a limited range of medium work. *See* 20 C.F.R., Pt. 404, Subpt. P, App'x 1 § 12.00 (equating the phrases "significantly limits your physical or mental ability to do basic work activities" and "is a severe impairment(s)"); *Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed. Reg. 50746, 50772 (Aug. 21, 2000) (explaining that a "severe" impairment, as defined in step two of the sequential evaluation, is equivalent to a significant work-related limitation of function). *See McClellan v. Astrue*, – F.Supp.2d –, 2011 WL 2670563, at *11 (E.D. Tenn. Jul. 7, 2011).

11

The record is equivocal regarding the other criteria. First, Vasquez bore the burden to show he had "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifest before age 22." The record included evidence that Vasquez was in special education classes since the second grade, placed in "8 EMR" in eighth grade, and after being found eligible for "developmentally handicapped services" in the ninth grade, he dropped out of school. (Tr. 269-278.) *See Yates v. Astrue*, 2009 WL 2611276, at *10 (M.D. Tenn. Aug. 25, 2009) (history of poor or failing grades showed claimant had been intellectually challenged his entire life). The ALJ acknowledged that Vasquez has an eighth grade education, but he did not address Vasquez's school performance. The only mention of Vasquez's school records was in the formulation of the RFC, when the ALJ indicated Vasquez's IQ score of 72 in 1974. (Tr. 15.) This was not his lowest score. As Vasquez asserts, the Commissioner, when assessing limitations under 12.05, is required to use the claimant's *lowest* IQ score. 20 C.F.R. Part 404, Subpt. P, App'x 1 § 12.00(D) ("In cases where more than one IQ is customarily derived from the test administered, *i.e.*, where verbal, performance, and full-scale IQs are provided as on the WAIS, the lowest of these is used in conjunction with listing 12.05.") Therefore, the relevant IQ scores for purposes of this listing is Vasquez's verbal IQ score of 67 from the October 1983 school test and the full-scale/verbal IQ score of 66 from Dr. Hammerly's October 2007 test. (Tr. 274, 276, 363.)

The Commissioner argues that when considering an IQ score, the ALJ must look to the narrative reports that accompany the test results to determine if the score is considered valid and consistent with the claimant's developmental history and degree of functional limitation. *See* 20 C.F.R., Pt. 404, Subpt. P., App. 1, § 12.00D(6) (Intelligence Tests). The Commissioner contends that no psychologist or physician ever diagnosed Vasquez with mental retardation. The Sixth Circuit, however, has concluded that while a diagnosis of mental retardation is not a requirement of the diagnostic description of Listing 12.05(C), a diagnosis of a claimant as "outside the definition of 'mental retardation' is an important factor for the ALJ to consider in determining whether the claimant satisfies" the description. *Thomas v. Comm'r of Soc. Sec.*, 2010 WL 1254788, *11 (Mar. 25, 2010). *See, e.g., Alcorn v. Astrue*, 2008 WL 1790192, at *5 (E.D. Ky.

12

Apr. 18, 2008) (discussing *West v. Comm'r of Soc. Sec.*, 240 Fed. App'x. 692, 698–99 (6th Cir. 2007) and *Daniels v. Comm'r of Soc. Sec.*, 70 Fed. App'x. 868, 872 (6th Cir. 2003) representing cases in which the court approved of the ALJ's significant reliance on the absence of a diagnosis of mental retardation in the context of the introductory paragraph analysis); *Griffey v. Astrue*, Case No. 08cv786, 2009 WL 4396520, at *14 (S.D. Ohio Dec. 1, 2009) ("It is significant that no medical source of record thought Plaintiff met the diagnostic criteria for mental retardation, which are the same criteria necessary to satisfy [the] introductory paragraph of Listing 12.05C."); *Watts v. Astrue*, Case No. 6:08cv293, 2009 WL 3764044, at *4 (E.D. Ky. Nov.10, 2009) ("Importantly, even if the test scores were valid, not a single examiner said that the plaintiff met the description of mental retardation necessary to meet the 12.05 standard."); *Jones v. Comm'r Soc. Sec.*, Case No. 08cv562, 2009 WL 3498809, at *6 (W.D. Mich. Oct. 26, 2009) (*citing Cooper* and *Daniels* and *quoting Crayton v. Callahan*, 120 F.3d 1217, 1219–20 (11th Cir. 1997) ("a valid IQ score need not be conclusive of mental retardation, where the IQ score is inconsistent with other evidence ... in the record concerning the claimant's daily activities and behavior").

Here, the record contains sufficient evidence of developmental deficits at an early age to trigger specific consideration of Listing 12.05(C). It is entirely possible, however, that Vasquez does function at a level above the listing. This Court should not speculate what the ALJ might have considered with respect to Listing 12.05(C), if, in fact, he had addressed it.

In considering the entire record, the ALJ's decision is not supported by substantial evidence. *See Smith v. Astrue*, 2010 WL 5393999, at *5 (S.D. Ohio Dec. 1, 2010) (holding that the ALJ's decision "[wa]s not supported by substantial evidence," even though the ALJ "may have [had] an adequate basis" for finding that the claimant did not meet the listing, where the ALJ failed to address and resolve conflicting evidence.) Listing 12.05(C) was designed specifically for mildly mentally retarded individuals with additional severe impairments. The Court, while expressing no opinion whether Vasquez is in fact disabled, concludes only that the ALJ's decision failed to address this appropriately.

Vasquez also contends that the ALJ lacked substantial evidence in concluding that he

could perform his past work as a material handler. (Doc. No. 16 at 17-20.) The Court, however, will not address this issue as it has found remand is necessary on other grounds.

Vasquez can be awarded benefits only if proof of his disability is "compelling." *Facer v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits only if all essential factual issues have been resolved and proof of disability is compelling). When the ALJ misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The Court, therefore, concludes that remand is required under "sentence four" of 42 U.S.C. § 405(g).[5]

### VII. Decision

For the foregoing reasons, the decision of the Commissioner is vacated and the case remanded for further proceedings consistent with this Order.

IT IS SO ORDERED.

s/ Greg White
United States Magistrate Judge

Date: February 1, 2012

---

[5]Under sentence four of 42 U.S.C. § 405(g), the district court has the authority to reverse, modify, or affirm the decision of the Commissioner. This may include a remand of the case back to the Commissioner for further analysis and a new decision. A sentence four remand is a final judgment. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97-102, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).